UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
VINICIO DEL SALTO, MARIO FLORES,
JASON SAVERINO,

                Plaintiffs,

        - against -

VILLAGE OF DOBBS FERRY, GEORGE
LONGWORTH,

                Defendants.
--------------------------------------------------------x

04 Civ. 6793 (CLB)

***Memorandum and Order***

Brieant, J.

      Pending before the Court in this First Amendment retaliation and employment discrimination action under 42 U.S.C. § 1983 is Defendants' motion for summary judgment, or in the alternative to sever the trials of the Plaintiffs (Doc. No. 31). Opposition papers were filed November 28, 2005, and reply papers were filed December 12, 2005. The Court previously denied dismissal of Del Salto's claims, despite concluding that Defendants demonstrated the spoliation of evidence by Mr. Del Salto, which was comprised of tape-recorded telephone conversations, which may or may not have contained evidence indicating that Plaintiffs were not discriminated against.

      The following well-pled facts appear in the Complaint and are assumed to be true for purposes of this motion only. Plaintiffs were all hired between January and June 2001, to serve as police officers of the Dobbs Ferry Police Department. Their hiring was the result of affirmative action by the defendant Chief Longworth, who perceived that Caucasian officers had difficulty speaking with and relating to a growing Hispanic population in the Village. Defendant

1

Chief Longworth recommended hiring each of the Plaintiffs after conducting a background investigation.

In the fall of 2001, Plaintiffs advised the PBA President that they did not want the Police Chief as a PBA member because his presence at union meetings chilled their expression. Plaintiffs contend that Chief Longworth reacted adversely by appearing personally at the November 2001 PBA meeting and that he proposed alternatives to the then current union representation; and commenced in conjunction with his lieutenants intense disparate and adverse job treatment of the Plaintiffs, whom Chief Longworth apparently blamed for the attempt to exclude him from the PBA. Plaintiffs claim disparate treatment and adverse employment actions by the Village, discussed below, and that these acts were done in retaliation for their all having objected to the Chief's membership in the PBA (and his attendance at meetings when employment issues and matters under negotiation with the Department were discussed, or because of discrimination.

*Jason Saverino*

Mr. Saverino, like Flores and Del Salto had worked for the Village of Washingtonville Police Department at one time. They were friends. All were affirmatively recruited for the Dobbs Ferry Police Department by defendant Longworth. He entered on duty on April 25, 2001. His service was unremarkable until January 1, 2002 when he injured his right shoulder and was placed on light duty.

At about this time, because of what was perceived to be excessive sick days taken, he was placed on a list with others of "chronic sick" officers. Presence on the list had an adverse effect on job conditions, but this was minimal and there is no evidence that he was singled out for this classification. Because he was on light duty by reason of his shoulder injury, he was assigned to non-rotating day tours. He perceived this to be an adverse employment action, however, others were usually so assigned when placed on light duty. Shift assignment in any police department is a management prerogative except as limited by the union collective bargaining agreement.

Other petty personnel disputes are claimed by Mr. Saverino. He sought compensatory time off on April 22, 2002 but was denied on the ground of insufficient accumulated overtime. His efforts to adjust the time records resulted in a dispute with Lt. Gelardi, and the Chief wrote him up for insubordination. No penalty was imposed. The write-up asserted that he had a prior deficiency in 2001 arising out of time slips.

A complaint made in 2002 by a secretary in the Chief's office that Saverino had been harassing her in connection with his vacation and sick time records, and had made her feel "uncomfortable" resulted in an oral direction by the Chief that Saverino have no contact with the secretary and thereafter on April 24, 2002, all department personnel below the rank of Lieutenant were ordered not to "communicate directly with either of the Chief's secretaries regarding department operations or time records." Saverino violated this order. While the Chief authorized the filing of disciplinary charges for this and related claimed misconduct, they were

3

never adjudicated by the Village Board.

Thereafter, in July 2002, Mr. Saverino received a witness subpoena for Orange County Supreme Court. There was a difference of opinion as to what instructions were given him as to his obligations to return to work that day. He left the Orange County Courthouse after fifteen minutes and remained in Orange County for the rest of the day. For this he was charged, and a disciplinary hearing was held by the Village Board on September 24, 2002, at which Saverino was represented by counsel. Hearings were adjourned until February 10, 2003. In the meantime, on November 14, 2002, Mr. Saverino suffered a serious off-duty injury to his knee.

On March 19, 2003, the Village Board issued its decision finding Saverino guilty on both charges, arising out of the failure to return to work immediately after the trial subpoena was adjourned, and for giving a false version on August 6, 2002 concerning the oral instructions given to him and his failure to return from Goshen. Ultimately, he received a twenty (20) day suspension.

Plaintiff filed an Article 78 Proceeding in the New York Supreme Court which was transferred to the Appellate Division on October 15, 2003. It remains undecided. Defendants claim the Article 78 Proceeding was "abandoned," but no record evidence was presented as to its procedural status. Plaintiff was represented in that case by a different attorney, not appearing in this case. If in fact the case was dismissed for neglect to prosecute, we would expect an order to that effect to be available and produced.

From the record before this Court, it appears that the disciplinary charges had a factual basis. The perceptions of the charging party and the Plaintiff as to what was actually said by Lt. Gelardi and whether his orders were wilfully disobeyed, are issues upon which reasonable persons could differ. No evidence is presented on the motion from which a reasonable jury could infer bad faith, disparate treatment, discrimination or retaliation by bringing the charges or based upon the decision to uphold them.

On May 7, 2003, Mr. Saverino had knee surgery. He never returned to work, and submitted his physician's note that he was totally disabled and not fit for duty. Defendants denied vacation pay, on the ground that he accrued no vacation because he wasn't working. Apparently, Plaintiff regards this as harassment, but it appears to be a routine practice and no grievance was filed.

On May 25, 2004, the Village Board voted to terminate Mr. Saverino's employment as a police officer, as permitted by New York statute, because he had been absent from the job for one year and had indicated he would not be returning in the near future. He has filed for disability retirement benefits with the New York State Police Retirement System and testified as recently as April 21, 2005 that he remains totally disabled from working as a police officer.

Saverino also asserts a number of issues which the Court regards as insignificant or within management prerogative. These include adoption of a new rule, applicable to all desk officers, but enacted simultaneously with his assignment to desk (light) duty, which forbids the

desk officer from watching television; a dispute over his vacation time rollover rights; that he was required, as were others, to be around his home when on sick leave; that his weapon was taken away when on light duty; and that he was denied specialized training on one occasion. All these assertions appear to the Court to be either trivial, or involving others as well as Saverino.

This Court concludes that Mr. Saverino has not demonstrated any adverse employment actions taken against him. It was not unreasonable for the Chief to accept as true the complaint of his secretary and thereafter to bar all officers below the grade of Lieutenant, not just Saverino, from further contact with her. There was at least an arguable basis for the disciplinary charges arising out of the trip to Goshen, and no evidence to permit an inference of bad faith.

Clearly Saverino was absent from his duties for more than a year, sufficient to trigger the operation of New York Civil Service Law Section 73. Fairness to the taxpayers of the Village required his termination. Plaintiff presents no credible evidence of unequal treatment. The trivial items charged as harassment are part of life in a quasi-military unit, and there is no significant evidence that the rules and command decisions of which Saverino complains were not generally applied. That on one or two occasions some other officer may have slipped through the network of Mickey Mouse, is not evidence of discrimination, retaliation or hostile work environment. It is at least of passing interest that Chief Longworth, who reached out to hire all three Plaintiffs knowing of their ethnicity or national origin, is the actor now charged with discrimination.

Defendants are entitled to summary judgment in their favor dismissing the claims of Jason Saverino.

*Mario Flores*

Mr. Flores was also hired from the Washingtonville Police Department at about the same time as the other Plaintiffs. On his employment application, in response to questions whether any disciplinary action had been taken against him by an employer, and whether he had ever, while employed by a police department, "received charges in connection with alleged misconduct or rules violations" he had answered in each case "N/A."

While in probationary status, he received a desk appearance ticket in Dutchess County for
striking two women in a bar on February 11, 2001 while off duty. Complainants both dropped the case and no report of the incident was made by Flores to his Chief, as required by Department policy.

On November 3, 2001, Flores called in sick but was found absent from his home during a scheduled tour, for which he was ordered to forfeit eight (8) hours compensatory time. On deposition, he did not testify that the rule of general application requiring offices calling in sick to remain in their homes during their tour of duty was discriminatorily applied, nor is there any other evidence in the case that it was.

On June 17, 2002, he suffered a job related physical injury. He testified on deposition that after he remained on sick leave, on June 19 the Chief arranged for him to be brought to headquarters from his home in Chester, New York to be seen by the Department Surgeon, because the Chief felt he was faking his injury. This practice was, however, commonly followed with respect to other officers in the department. He returned to full duty on August 9, 2002. During this period he filed two grievances under the collective bargaining agreement, that he had been wrongfully denied two personal days, and wrongfully denied overtime assignments while on light duty. The collective bargaining entity failed to present the first of the grievances, and with respect to the second, it appeared that persons on light duty ordinarily do not receive overtime assignments. The Union President, Kevin Raffa, not sued here, wrote Mr. Flores' representative to the effect that this was so.

He claimed on August 30, 2002 that the union failed to grieve a change applicable to all officers with respect to processing claims for work related injuries, and complained that he was not scheduled for gas mask training. He was written up on September 29, 2002, without penalty or other discipline, for failure to dispatch a paramedic while he was serving as desk officer. Flores on his deposition conceded he had no evidence that others were treated differently under the same circumstances.

On January 7, 2003, the Chief issued disciplinary charges against Mr. Flores for failure to come in and report in person an incident on October 11, 2002 where he and several other off-duty officers including Mr. Del Salto were present. His reason was that the on-duty officer who

covered the fracas told him he did not need to come in.  No disciplinary action was taken.

A minor scandal erupted in February, 2003 when Flores sought the aid of Officer Rodriguez to speak with Officer Ingani to fix a speeding ticket which Ingani had issued to a civilian, Janet Ruffler.  Thereafter, the ticket disappeared from Department files, as is customary in such situations, and both Rodriguez and Flores were investigated by the District Attorney.  Rodriguez admitted responsibility and was suspended for ten days.  Flores received a warning.

Flores filed several other union grievances, mostly related to days off or the use of comp time.  Nothing about these items shows any evidence of discrimination or disparate treatment.

Ultimately, in February 2003, the Department claimed to have learned for the first time that the ambiguous entry "N/A", noted above, to the questions on his employment application as to whether he had been disciplined in his prior police employment, concealed and withheld that he had been terminated by the Orange County Sheriff's Department as part of a disciplinary action and then reinstated four weeks later (for a fight in a bar while off duty) and also had been suspended for three days in connection with an on-duty disciplinary matter.  Flores disputes these facts and asserts that he was advised to fill in "N/A" rather than yes or no.  The Department investigated.  Thereafter, Mr. Flores was indicted in Westchester County for offering a false instrument for filing, disposing of these charges by a plea to "disorderly conduct" on February 4, 2005.

The Village thereafter sought Mr. Flores resignation by agreement. Although a resignation was negotiated with the aid of counsel, Mr. Flores refused to sign and discharged the attorney.

A disciplinary proceeding followed, based on charges of falsifying his employment application. The facts involving the charges are, to say the least, murky. There were disputed issues of fact. Having been denied an adjournment of the disciplinary hearing (based on the fact that his criminal charges had not yet been resolved by a plea bargain), Mr. Flores did not seek a stay from the state court; he just didn't appear at the initial hearing. On April 27, 2004, Flores appeared at an adjourned hearing and asked for a further adjournment to permit him to seek legal counsel. This was denied and the hearing went forward.

The conduct of the hearings, the ultimate findings and the nature of the evidence relied on
are hardly such as to inspire confidence. However, utterly lacking in the extensive record before this Court is any evidence that Chief Longworth is responsible for any apparent deficiencies in the proceedings of the Village Board, or that these proceedings were pretextual, and brought to effect a discriminatory or unlawful purpose.

As was his right, Mr. Flores filed an Article 78 proceeding following his termination as a result of the decision of the Village Board upholding the charges. The Supreme Court (Acting Justice Loehr) upheld the position of the Village as to those claims based on denial of due

process and abuse of discretion in conduct of the hearing, including denial of the requested adjournment, and transferred, as required by New York law, to the Appellate Division the issues of whether the evidence was sufficient and whether the penalty imposed was excessive. This litigation remains unresolved in the Appellate Division. However, as to the undisturbed findings of fact and conclusions of law with respect to that part of the case decided by Justice Loehr, there is no reason not to apply issue preclusion in this Court.

There is no evidence that the adverse employment decision in Flores case is the product of discrimination or the result of retaliation or disparate treatment nor is there evidence of a hostile work environment. Defendants are entitled to summary judgment in their favor dismissing the claims of Mario Flores.

*Vinicio Del Salto*

Mr. Del Salto's case stands on slightly different ground than that of his Co-Plaintiffs. He began working for the Dobbs Ferry Police Department on June 15, 2001 and continues to be employed there. Del Salto along with the Co-Plaintiffs had sued the Village for a Fair Labor Standards Act violation. This suit began in April 2003 and was settled in November 2004. For reasons unknown, the settlement was not global in nature. Neither of the attorneys presently before this Court in this litigation was personally responsible for that separate lawsuit.

That lawsuit arose out of an ultimately unsuccessful attempt to establish a K-9 training program in the Village Police Department. Throughout the state, K-9 officers, because they are

11

with their assigned dog at home and have to engage in dog care and training, have successfully claimed overtime payments. This has resulted in a considerable aversion to establishing such programs.

Del Salto was cited in March 2003 for not showing up for his scheduled tour of duty. The memorandum specifically stated it was not formal discipline. In June 2003, he filed an overtime grievance and in January 2004, he was criticized by a sergeant for leaving a shotgun in his car.

On June 27, 2004, he sought the assistance of a sergeant to file a harassment report and thereafter did so, asserting that Sergeant Spediliare had made offensive comments about Hispanics, as he apparently did, claiming that he had been disciplined for writing an incorrect accident report and that he had been "written up for leaving his shotgun in the car and that he had not been allowed to choose his vehicle or post in accordance with seniority."

The Chief responded by having the Village's outside labor counsel investigate. The Report of the Village's outside counsel concluded that Sergeant Spediliare had, on occasions, made inappropriate comments about the national origins of other officers and recommended he lose five days vacation pay. Spediliare agreed to this penalty. Del Salto conceded that thereafter he never heard any discriminatory remarks from Sergeant Spediliare. However, he was overheard to make fun of the sensitivity training programs. The Report found no merit in Del Salto's other complaints.

Thereafter, in June 2004, he was issued a memorandum documenting that he had failed to retrieve an oxygen tank and on October 5, 2004, he failed to show up for work without giving prior notice, and explained that he had fallen asleep. While responding to a call, he hurt his lower back and after being out of work for several months with pay, he returned to work on light duty on December 24, 2004. He returned to full duty on April 15, 2005.

The deposition testimony of Mr. Del Salto was somewhat weak and confusing. He seems to admit that the policy of the Department was to prohibit the carrying over of vacation time and was unable to identify the occasions where he was wrongfully denied overtime. He claimed that he was denied training but conceded that he could not show that this was disparate treatment. He claimed that he was required to remain at home during his scheduled tour while on sick leave but conceded that he knew of no situation where other sick officers were permitted to do otherwise.

Department records appear to support the contention of the Defendants that other persons are written up for similar routine violations, and that there is no basis for a conclusion that the rules of the Department were applied in a disparate fashion to Mr. Del Salto. In short, the record does not show any disparate treatment or adverse employment action in his case which could be ascribed to a discriminatory motive or retaliation for exercise of First Amendment protected speech. On the contrary, the record reveals corrective and disciplinary actions routinely taken against officers, including Plaintiff, for conduct not in accord with department standards.

In the absence of an adverse employment action, there is no claim for retaliation.

13

An open question in connection with the motion is whether any of the Plaintiffs exercised privileged speech. Whether the topics of their complaints were matters of public concern is perhaps doubtful. Plaintiffs spoke out about a perceived practice of giving free parking permits to Village officials. Later, it turned out that this was a longstanding practice of the Village, and was not unlawful. The right of a whistle-blower to speak out about perceived public corruption is not limited by whether his complaints are well founded.

The big issue seems to be that the Plaintiffs spoke out against the fact that Chief Longworth, a long time member of the PBA was present at meetings where the PBA, acted as a collective bargaining unit or performed its ordinary work of dealing with perceived problems of fairness on the job. It is not clear that the presence of Chief Longworth at the meeting inhibited the efforts of the PBA to deal with on-the-job problems, and indeed, in some circumstances, he may have been helpful to the officers in doing so.

Defendants claim that whether or not the Chief of Police can attend meetings of the PBA is purely an internal matter of Police Department Administration and not a matter of public concern. Whether it is a matter of public concern or not is an issue of law for the Court. While, as noted earlier, this issue is not free from doubt, this Court is of the view that the administration of the Taylor Law and the manner in which collective bargaining matters are resolved in a Police Department are in their very nature matters of public concern. The public has a substantial stake in the fair treatment of the employees, and that the public labor policy of the State of New York as reflected in the Taylor Law should be respected and adhered to.

There is no evidence presented which would allow a reasonable juror, acting reasonably, to find an unjustified, adverse employment action or disparate treatment with respect to Mr. Del Salto as claimed, or that any such violation or disparate treatment was motivated by a desire to retaliate for the exercise of the privileged speech.

For the foregoing reasons, the motion for summary judgment is granted and the motion for a trial severance is denied as moot.

The Clerk shall file a final judgment.

X

       X

         X

           X

SO ORDERED.

Dated: White Plains, New York
       December 22, 2005

                                                                                             _____
                                                                                             Charles L. Brieant, U.S.D.J.